IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STATON HOLDINGS, INC. d/b/a | § | |
| STATON WHOLESALE d/b/a | § | |
| STATON CORPORATE AND CASUAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:09-CV-0419-D |
| VS. | § | |
| | § | |
| RUSSELL ATHLETIC, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Staton Holdings, Inc. d/b/a Staton Wholesale d/b/a Staton Corporate and Casual ("Staton") sues defendants Russell Athletic, Inc. and Russell Corporation f/k/a Jerzees Apparel, L.L.C. (collectively, "Russell") for breach of contract, tortious interference with business relationship, and violation of the Robinson-Patman Price Discrimination Act ("Robinson-Patman Act"), 15 U.S.C. § 13(a). Russell moves for partial dismissal under Fed. R. Civ. P. 12(b)(6), seeking dismissal of Staton's tortious interference with business relationship and Robinson-Patman Act claims. For the reasons that follow, the court grants the motion, but it also grants Staton one final opportunity to amend.

I

Russell manufactures various apparel products, and, for a number of years—until the end of 2008—it sold these products to Staton, a wholesale distributor. In 2008 Staton attempted to return $1,684,980.48 worth of unsold merchandise pursuant to a

contract with Russell.  Russell refunded $1,251,402.96 for products that Staton returned, but it refused to accept a particular shipment of returned products or refund $433,577.52 for that shipment.  In 2009 Russell ceased doing business with Staton, refusing to fill any further orders.

In 2008——before Russell rejected the returned merchandise——Staton sued Russell in Dallas County Court, but did not serve the petition on Russell.  Staton amended its petition in 2009, apparently alleging its current breach of contract claim. Russell later removed the case to this court.  Staton filed a second amended complaint in which it alleged that Russell was also liable for tortious interference with a business relationship and for violations of the Robinson-Patman Act.  Russell moved to dismiss under Rule 12(b)(6).  In the motion, Russell argued that Staton had failed to allege the following: that Russell breached an independent duty; an existing contract with which Russell interfered; and contemporaneous sales or a harm to competition. Staton opposed the motion and also moved for leave to amend.  The court granted Staton such leave, and it filed its third amended complaint.  Russell moves anew for partial dismissal under Rule 12(b)(6), re-urging the same arguments raised in its prior motion.

II

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to

- 2 -

relief."  While "the pleadings standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*  (quoting *Bell Atl.*, 550 U.S. at 555).  "The court does not, however, 'rely upon conclusional allegations or legal conclusions that are disguised as factual allegations.'"  *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (quoting *Jeanmarie v. United States*, 242 F.3d 600, 602-03 (5th Cir. 2001)).

In deciding a Rule 12(b)(6) motion, "[t]he 'court accepts all well-pleaded facts as true viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive the motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl.*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 129 S.Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.; see*

*also Bell Atl.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged——but it has not 'shown'——that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted).

### III

Russell moves to dismiss Staton's tortious interference with a business relationship claim.

### A

"The theory of tortious interference with business relations by a third person includes two causes of action: (1) tortious interference with existing contracts, and (2) tortious interference with prospective contractual relations." *Dunn v. Calahan*, 2008 WL 5264886, at *3 (Tex. App. Dec. 17, 2008, pet. denied) (mem. op.) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989)). In its complaint, Staton must allege facts that, when viewed in the light most favorable to it, allow the court to draw the reasonable inference that Russell is liable for tortious interference under Texas law. The factual allegations must include more than mere labels and conclusions and a formulaic recitation of the elements of its claim. Staton's tortious interference claim rests on the premise that Russell interfered with Staton's business

relationships with existing and prospective customers by cutting Staton off and refusing to allow Staton to restock its inventory of Russell products after Staton returned some Russell products at the end of 2008.  Staton maintains that, without a supply of Russell products, it was unable to sell them to existing and prospective customers.

B

The court first addresses Staton's claim for interference with prospective business relations.  To state this claim, Staton must adequately plead (1) that there was a reasonable probability that it would have entered a contractual relationship with a third party; (2) that Russell committed an independently tortious or unlawful act that prevented the contract from being formed; (3) that Russell's tort was committed with a conscious desire to prevent the formation of the contract, or substantial certainty that the act would prevent the formation of the contract; and (4) that Staton suffered actual harm as a result.  *See, e.g., Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App. 2006, pet. denied) (citing *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 414-15 (Tex. App. 2001, pet. denied)).  "Independently tortious" means conduct that would violate some other recognized tort duty "that is already recognized to be wrongful under the common law or by statute."  *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001).

Russell contends that Staton has failed to allege that Russell violated a recognized tort duty.[1]   Staton responds that Russell's refusal to sell Staton more products is an independent tort.   In its third amended complaint, Staton alleges that Russell committed the tort of interference with prospective business relations by "refusing to allow [Staton] to restock its inventory of [Russell's] products." 3d Am. Compl. ¶ 19.   Staton also asserts that, "despite the fact that [Staton] was still a vendor in good standing of [Russell's] products, [Russell] cut off [Staton] and refused all attempts to restock [Russell's] product . . . .   Staton was placed on a 'credit hold' and no further product orders were honored[.]" *Id.* at ¶ 11.   In its brief, Staton maintains that the independently tortious act requirement is met by Russell's "wrongfully cutting off [Staton's] supply of [Russell's] product in a deliberate attempt to hurt [Staton's] business by making it unable to service its existing and prospective customers[.]"   P. Br. 11.

The court holds that Staton has not adequately alleged that Russell committed an independently tortious or unlawful act by refusing to sell its products to Staton.   In its third amended complaint, Staton avers that, in response to Staton's decision to return products to Russell at the end of 2008, Russell cut Staton

---

[1]Russell also maintains that Staton has failed to allege any probable contracts with which Russell's conduct interfered. Because the court grants Russell's motion on other grounds, it need not consider this argument.

- 6 -

off and refused to restock Staton with Russell products, thereby retaliating against Staton for exercising its contractual right to return products. If Staton has a claim based on this conduct, it is one for breach of contract, not for an independent tort. Under Texas law, a breach of contract does not alone constitute a separate tort. *See Creel v. Houston Indus., Inc.*, 124 S.W.3d 742, 753 (Tex. App. 2003, no pet.) (citing *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 44-45 (Tex. 1998)). Where an act gives rise to liability only because it breaches the parties' contract, the plaintiff's claim sounds only in contract. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

Similarly, when a plaintiff is only injured by loss of the subject matter of the contract, it only has an action for breach of contract. *See Nat'l Union Fire Ins. Co. v. Care Flight Ambulance Serv., Inc.*, 18 F.3d 323, 327 (5th Cir. 1994) (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)). In its response, Staton argues that *National Union* holds that a plaintiff may assert both a breach of contract claim and a tort claim based on the same breach of contract. Staton misreads *National Union*. While that case does hold that the same conduct can give rise to both contractual and tort liability, it also concludes that such tort liability must arise independently of the contract——that is, based on a law other than the law of contract. *Nat'l Union*, 18

F.3d at 326 ("Texas cases also recognize that when certain legal relationships exist between contracting parties, the law may impose affirmative duties that are separate and apart from the contractual promises made between those parties.").

Because Staton has failed to plead a legally cognizable, independent tort that Russell committed, the court grants Russell's motion to dismiss the prospective contractual relations component of Staton's tortious interference with business relationship claim.

C

The court now considers the component of Staton's claim for tortious interference with business relations that concerns tortious interference with existing contracts.  To state this claim, Staton must adequately plead (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that such interference proximately caused injury; and (4) that actual damage or loss occurred.  *E.g., Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 489 (5th Cir. 2008); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

Russell argues that Staton has failed to allege any active contract with which Staton interfered.[2]  In its third amended

---

[2]Russell also argues that Staton has failed to allege any facts from which the court could infer willfulness or intent, and that Staton has not alleged that Russell had any knowledge of the contracts with which it interfered.  Because Staton's claim must be dismissed for another reason, the court need not address these

complaint, Staton refers several times to its inability to service or fill orders for its "existing" customers, *see, e.g.,* 3d Am. Compl. ¶¶ 12, 13, and 19. It does not, however, identify any specific customer or plead facts that permit the reasonable inference that Russell interfered with a specific contractual relationship with that customer.

The court is aware of decisions that have held that general allegations similar to those contained in Staton's third amended complaint are sufficient to state a claim. For example, in *Stewart Glass & Mirror, Inc. v. U.S.A. Glas, Inc.*, 940 F.Supp. 1026 (E.D. Tex. 1996), the plaintiff alleged that it had "existing . . . relationships with customers." *Id.* at 1039. The court explained that "[t]o survive a motion to dismiss under Rule 12(b)(6), Plaintiffs are not required to allege that Defendants interfered with specific contracts." *Id.* (citing *Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 (5th Cir. 1993)). It concluded that plaintiffs' complaint was sufficient because it "provides a short and plain statement that gives Defendants notice of what their tortious interference claims are and the general factual grounds upon which they rest." *Id.* Another court refused to dismiss a tortious interference claim where the plaintiff "alleged that it is in the business of procuring donor tissue from donor sources and distributing tissue to end-users and that Defendant 'willfully and

arguments.

intentionally' interfered with these third-party contracts to Plaintiff's detriment." *Tissue Transplant Tech., Ltd. v. Osteotech, Inc.*, 2005 WL 958407, at *6 (W.D. Tex. Apr. 26, 2005) (applying similar New Jersey law). The court held that, "[a]t this point, this allegation is sufficient to state a claim for tortious interference with contract." *Id.*

But while *Stewart Glass* and *Tissue Transplant* reflected the prevailing interpretation and application of Rules 8 and 12(b)(6) when they were decided, they both predate the Supreme Court's more recent decisions in *Bell Atlantic* and *Ashcroft*. Subsequent to *Stewart Glass* and like decisions, the Court has ruled that formulaic recitations of the elements of a cause of action, such as in Staton's third amended complaint, are insufficient to state a claim on which relief can be granted. *See Ashcroft,* 129 S.Ct. at 1949 (quoting *Bell Atl.*, 550 U.S. at 555).

Due to the generality of Staton's third amended complaint, the court cannot reasonably infer that Staton had a contract with any existing customer. As pleaded, it is possible that Staton is complaining about its inability to fill future orders—i.e., prospective contracts—rather than, say, a pending customer order that Staton was in the process of filling when Russell cut it off. Paragraph 6 of the third amended complaint, for example, implies just this: "[Staton] enters into contracts with these customers *when they do business with [Staton]* and both parties have

- 10 -

obligations thereunder." 3d Am. Compl. ¶ 6 (emphasis added). Staton should be able to do more than essentially re-state the essential legal elements of this claim and then augment them with general factual allegations about Russell's conduct. To state a claim that is plausible on its face, Staton must plead facts that identify a specific customer with whom it had a specific contract with which Russell interfered. It should also plead facts that permit a reasonable inference that, in cutting off Staton's supply of Russell products, Russell willfully and intentionally interfered with that contract,[3] that this interference proximately caused injury to Staton, and that Staton sustained actual damage or loss.

D

Accordingly, for the reasons explained, the court grants Russell's motion to dismiss Staton's tortious interference with a business relationship claim.

---

[3]For example, under Texas law, to establish the element of willful and intentional interference, Staton must do more than establish that such interference was the consequence of Russell's cutting off Staton's supply of products. It must demonstrate that Russell desired to cause the consequences of its act, or that it believed the consequences were substantially certain to result from it. *See Amigo Broad*, 521 F.3d at 490. Further, "the interfering party must have actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship." *Id*. (internal quotation marks omitted). At the pleading stage, this means that Staton must plead facts that establish the plausibility that Russell acted willfully and intentionally.

IV

Russell maintains that Staton has failed to state a claim for a violation of § 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a).

A

15 U.S.C. § 13(a) provides:

> It shall be unlawful for any person engaged in commerce . . . to discriminate in price between different purchasers of commodities like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States . . ., and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

To state a claim under the Robinson-Patman Act, Staton must allege that (1) Russell's products were sold in interstate commerce; (2) the products sold to Staton and its competitors were of "like grade and quality"; (3) Russell discriminated in price between Staton and these competitors; and (4) the effect of that discrimination was "to injure, destroy, or prevent competition" to the advantage of one of Staton's competitors. *See Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177-78 (2006); *Chawla v. Shell Oil Co.*, 75 F.Supp.2d 626, 645 (S.D. Tex. 1999).

- 12 -

B

Russell first argues that Staton has failed to state a claim under the Robinson-Patman Act because it has not alleged that Russell made contemporaneous sales to Staton and a competitor at different prices.

"[I]n order to allege a violation of § [13(a)] one seller must have made at least two actual sales to two actual buyers at different prices." *L & L Oil Co. v. Murphy Oil Corp.*, 674 F.2d 1113, 1120 (5th Cir. 1982). Numerous courts have held that such transactions must also be contemporaneous. *See, e.g., Sec. Tire & Rubber Co. v. Gates Rubber Co.*, 598 F.2d 962, 964 (5th Cir. 1979) ("Courts have interpreted the [§ 13(a)] language to require that a plaintiff establish two separate and contemporaneous sales transactions made by the same seller to two distinct purchasers.").[4] But the two sales need not be made on the same

---

[4]*See also B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 439 F.3d 653, 665 (10th Cir. 2006) ("[Plaintiff] would have to show that the deals [to competitors] granted more favorable prices than those granted to [plaintiff] in its reasonably contemporaneous purchases."); *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 521 (6th Cir. 2004) ("Section [13(a)] applies only if "two or more consummated sales of commodities of like grade and quality are made at discriminatory prices by the same seller to two or more different purchasers contemporaneously or within the same approximate time period.") (citing Hugh C. Hansen, *Robinson-Patman Law: A Review and Analysis*, 51 Fordham L. Rev. 1113, 1127-28 (1983)); *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 142 (3d Cir. 1998) ("In order to state a claim under the Robinson-Patman Act, a plaintiff must allege facts to demonstrate that (1) the defendant made at least two contemporary sales of the same commodity at different prices to different purchasers. . .") (citing *Brooke Group Ltd. v. Brown & Williamson*

- 13 -

day).  *See Innomed Labs, LLC v. Alza Corp.*, 2002 WL 31521084, at *3 (S.D.N.Y. Nov. 13, 2002) (concluding that nothing supported position that contracts formed a few months apart could not be considered contemporaneous under the Robinson-Patman Act").  The contemporaneous sale requirement is an interpretation of § 13(a)'s requirement that a seller have discriminated in price between two or more buyers.  *See A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1407 (7th Cir. 1989) ("Whether [the defendant] engaged in price discrimination as the Robinson-Patman Act uses that term depends on whether it charged the same price to customers at the same time.").  The sales must therefore be close enough in time that the difference in price can be considered discriminatory.

In its third amended complaint, Staton alleges that "[Russell]. . . discriminate[s] in price between various purchasers."  3d Am. Compl. ¶ 22.  It specifically avers that "[Russell] sell[s] the identical products to numerous wholesalers, but give[s] preferential pricing to favored companies, such as San Mar and Broder Brothers, to the extent that these favored companies are able to actually sell [Russell's] product at below the purchase cost of [Staton] and other unfavored companies."  *Id.*  This assertion is sufficient, because the allegation that "[Russell] sell[s] the identical products to numerous wholesalers" permits the reasonable inference that the sales are contemporaneous.

---

*Tobacco Corp.*, 509 U.S. 209, 219-27 (1993)).

C

Russell also contends that Staton has not stated a claim under § 13(a) because it has not adequately pleaded that Russell's allegedly discriminatory pricing hurt competition in the market for athletic apparel.[5] Russell cites *Oreman Sales, Inc. v. Matsushita Electric Corp. of America*, 768 F.Supp. 1174 (E.D. La. 1991), to contend that a plaintiff must allege an injury to competition that exceeds an injury merely to the plaintiff's ability to compete in a given market.

1

In *Oreman Sales* the court held that, "even assuming that lower prices by [the defendant] to other distributors might well harm [the plaintiff's] own ability to compete with those distributors . . ., one competitor's mere inability to compete is not actionable *per se* under section 13(a)." *Id.* at 1185.  In support of this conclusion, the court cited *International Air Industries, Inc. v. American Excelsior Co.,* 517 F.2d 714, 721 (5th Cir. 1975).  But *International Air* involved primary-line discrimination.  A "primary-line" violation occurs where a defendant charges in one

---

[5]Section 13(a) requires that Staton allege (and prove) only the substantial possibility that Russell's conduct may harm competition. *See, e.g., J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir. 1990) ("In keeping with the [Robinson-Patman] Act's prophylactic purpose, . . . [§ 13(a)] does not require that the discrimination must have actually harmed competition." (quoting *Falls City Indus. Inc. v. Vanco Beverage, Inc.,* 460 U.S. 428, 435 (1983)).

geographical area (but not in others) a price so low that others cannot compete with it in that area. *See Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 558 n.15 (1990). A "secondary-line" violation occurs when the defendant's price discrimination injures competition among its own customers. *Id*. Staton therefore alleges a secondary-line violation. In a secondary-line case, a plaintiff can show competitive injury by establishing that it paid substantially more than a competitor for a given product. *Id.* at 559 (citing *FTC v. Morton Salt Co.*, 334 U.S. 37, 46-47 (1948)). To prove a competitive injury in a secondary-line case, a plaintiff must establish that (1) it was engaged in actual competition with the favored purchaser(s), and (2) competition was harmed by the price discrimination. *See George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 141-42 (2d Cir. 1998); *Chawla*, 75 F.Supp.2d at 651. Staton may therefore adequately state a claim under the Robinson-Patman Act by asserting a sustained, substantial price differential between or among secondary-line competitors. *See George Haug*, 148 F.3d at 142.

Staton must actually be in competition with the favored purchasers for its competition with those purchasers to be injured. *See id.* at 141 (citing *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir. 1987)). "Determining the presence or absence of functional competition between purchasers of a commodity is simply a factual process which focuses on whether

- 16 -

these purchasers were directly competing for resales among the same group of customers." *Id.* at 141-42 (citing *FTC v. Fred Meyer, Inc.*, 390 U.S. 341, 349 (1968) (15 U.S.C. § 13(d) case)). Courts consider whether parties competed at the same functional level (i.e., retail or wholesale) and in the same geographical market. *Id.* at 142.

Staton must also allege facts that demonstrate a reasonable probability that its competition with its competitors was harmed, which may be inferred "from evidence of a substantial price difference over time, because such a price difference may harm the competitive opportunities of purchasers, and thus create a 'reasonable possibility' that competition itself may be harmed." *Id.* (citing *Morton Salt*, 334 U.S. at 46-47); *see also Chawla*, 75 F.Supp.2d at 651. The *George Haug* court determined that the inference permitted by *Morton Salt* still applied in secondary-line cases, even though in *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), the Court stated that price differential alone was insufficient for primary-line liability under the Robinson-Patman Act. *Id.* at 144; *accord Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1272 (3d Cir. 1995) (holding—without referring to *Brooke Group*—that claim in secondary-line price discrimination case under Robinson-Patman Act was supportable upon proof of substantial price discrimination between competitors over time); *Coastal Fuels of P.R., Inc. v.*

- 17 -

*Caribbean Petrol. Corp.*, 79 F.3d 182, 192-93 (1st Cir. 1996) (recognizing "continued vitality of the *Morton Salt* rule, even in the face of *Brooke Group*'s alteration of standards for primary-line price discrimination," because the Robinson-Patman Act "added [to the Clayton Act] the following passage: 'or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.'"); *Chroma Lighting v. GTE Prods. Corp.*, 111 F.3d 653, 658 (9th Cir. 1997) (expressly adopting *Coastal Fuels*' conclusion that the *Morton Salt* inference is applicable in secondary-line price discrimination cases even after *Brooke Group*); *Chawla*, 75 F.Supp.2d at 652 ("For the reasons set forth by the Second Circuit in *George Haug Co*. and the cases cited therein, this Court concludes that the Fifth Circuit would follow the lead of the First, Second, Third and Ninth Circuits on this issue.").  This interpretation makes sense of the competitive injury requirement of the Robinson-Patman Act, which allows recovery where there has been an injury to competition between the plaintiff and the person benefiting from the price break.

Staton has plausibly alleged that it was in competition with other wholesalers whom Russell favored.  Staton pleads that Russell sells its goods to "other wholesellers in the same business as [Staton]," that "[t]hese wholesalers are located at various locations across the United States," that Russell "sell[s] the

- 18 -

identical products to numerous wholesalers," that "favored companies are able to actually sell [Russell's] product at below the purchase cost of Plaintiff and other unfavored companies," and that "[t]he effect of this discrimination is to make it impossible for non-favored companies to compete with the favored companies and creates a monopoly for the sale of [Russell's] products in favor of those favored companies." 3d Am. Compl. ¶ 22. Staton has therefore adequately pleaded that it was engaged in actual competition with the favored purchasers, and that competition was harmed by the price discrimination.

2

Staton has not, however, adequately alleged a substantial and sustained injury. In *George Haug* the court ruled that the alleged four-year price discrimination was sustained discrimination. *Goerge Haug*, 148 F.3d. at 144. Staton has made no equivalent claim, nor has it alleged facts that, viewed favorably to it, reasonably permit the conclusion that it has suffered a sustained injury. The allegation that "[Russell] sell[s] the identical products to numerous wholesalers" is sufficient to plead contemporaneous sales, but it says nothing about sustained sales at preferential prices.

Similarly, Staton does not assert sufficient facts to permit the reasonable inference that Russell's price discrimination was substantial. Staton avers that discrimination occurred, but it

does not specifically quantify what prices were paid.  Although Staton asserts that its competitors sell Russell's products at prices lower than what Staton and other unfavored customers pay Russell for these products, Staton does not allege any facts that permit the reasonable inference that Russell sold the products to the competitors for substantially less than it sold the products to Staton.  For example, competitor A could purchase a Russell jersey for $40 and sell it for $45, while Russell sold Staton the same jersey for $46.  It would be literally true, as Staton alleges, that competitor A was able to sell the jersey to the public for less than what it cost Staton to purchase it from Russell.  But without specific factual allegations, including some indication of the volumes of products involved, it could not reasonably be inferred that the price discrimination was substantial.

The court therefore holds that Staton's claim under the Robinson-Patman Act must be dismissed.

V

The court must now decide whether to grant Staton's request for leave to amend.

> [I]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that

will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quotation marks omitted) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). In this case, it is not clear that Staton's pleading deficiencies are incurable, and Staton has not advised the court that it is unwilling or unable to amend in a manner that will avoid dismissal. The court will therefore allow Staton one final opportunity to amend.

*       *       *

Accordingly, for the reasons explained, the court grants Russell's August 4, 2009 partial motion to dismiss. Staton may file an amended complaint within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED.**

November 20, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE